[Cite as *State v. Leaver*, 2011-Ohio-4068.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 25339 |
| | | |
| Appellee | | |
| | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| ERIC S. LEAVER | | COURT OF COMMON PLEAS |
| | | COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 09 08 2458 |

DECISION AND JOURNAL ENTRY

Dated: August 17, 2011

Per Curiam.

INTRODUCTION

**{¶1}** Deputy Michael Conley and Eric Leaver got into a fight in a holding cell after Deputy Conley arrested Mr. Leaver for operating a vehicle while intoxicated. According to Deputy Conley, Mr. Leaver attacked him when he opened the door of the cell to let Mr. Leaver out. Mr. Leaver claimed that Deputy Conley attacked him as he was exiting the cell. The Grand Jury indicted Mr. Leaver for assault, obstructing official business, operating under the influence of drugs or alcohol, possession of marijuana, and weaving. A jury found him guilty of assault, obstructing official business, and operating under the influence of drugs or alcohol and the trial court found him guilty of possession of marijuana and weaving. The court sentenced him to 18 months in prison. Mr. Leaver has appealed, arguing that the trial court incorrectly refused to allow the jury to listen to an interview of him that a sergeant recorded after the fight, that his convictions are not supported by sufficient evidence and are against the manifest weight of the

evidence, and that the court incorrectly imposed court costs on him without mentioning them at his sentencing hearing. We reverse his assault, obstructing official business, and operating under the influence of drugs or alcohol convictions because the trial court incorrectly allowed the jury to see but not hear an interview that a police sergeant conducted with Mr. Leaver after the fight.

## BACKGROUND

{¶2} On the evening of August 7, 2009, Deputy Conley was driving in a patrol car when he received a call about a possibly intoxicated driver. Because he was in the vicinity, he took the call and proceeded to locate and follow the suspicious car that was being driven by Mr. Leaver. He observed Mr. Leaver driving only 40 miles per hour on Interstate 77, weaving within his lane, and going outside of his lane on both sides. Deputy Conley activated his takedown lights, but Mr. Leaver did not pull over until he had gone another two miles.

{¶3} Deputy Conley testified that, as soon as he approached Mr. Leaver's car, Mr. Leaver began cursing at him. Mr. Leaver's breath smelled like alcohol, and he said that he had been drinking. Deputy Conley testified that he had Mr. Leaver exit his car and perform a couple of field sobriety tests, which he failed. Mr. Leaver grew frustrated with the tests and told the deputy that he was drunk and to just go ahead and arrest him. He insulted Deputy Conley and continued cursing at him throughout the encounter.

{¶4} Deputy Conley testified that he handcuffed Mr. Leaver and told him to get into his patrol car. Mr. Leaver started passively resisting him, however, so Deputy Conley had to push Mr. Leaver to his patrol car. After Mr. Leaver was in the patrol car, Deputy Conley searched Mr. Leaver's car and found a billy club and a small bag of marijuana.

{¶5} According to Deputy Conley, he transported Mr. Leaver to a district office, where another deputy asked Mr. Leaver if he would submit to a blood alcohol content test. Mr. Leaver

refused to take the test. After Deputy Conley completed some paperwork, he placed Mr. Leaver in a holding cell and gave him his cellular telephone so that he could call someone to pick him up.

{¶6}　At the time Deputy Conley placed Mr. Leaver in the holding cell, there were several other officers at the district office. While Mr. Leaver was waiting for a ride, however, a call came in about a vehicle pursuit that was going to be entering the district. All of the officers except Deputy Conley, therefore, left the office to assist with the pursuit. While the others were away, a woman arrived to pick up Mr. Leaver. Deputy Conley gave her Mr. Leaver's billy club and told her to take it to her car. He then went to get Mr. Leaver. According to Deputy Conley, he gathered Mr. Leaver's paperwork and belongings and passed them to him through a slot in the cell door. Although it appeared that Mr. Leaver was going to take them from the slot, when Deputy Conley let go, they dropped to the floor. Deputy Conley testified that he got the key for the cell door, unlocked the door, and swung it open for Mr. Leaver to exit. Mr. Leaver was on the floor gathering his belongings. The next thing Deputy Conley knew, Mr. Leaver stood up and punched him in the face with his fist.

{¶7}　According to Deputy Conley, his instincts told him to close the gap between Mr. Leaver and himself, so he "rushed" Mr. Leaver, which consisted of grabbing Mr. Leaver's throat with his left hand and pushing him backwards into the wall of the cell. He testified that he had to use all of his strength to keep Mr. Leaver, who was seven inches taller than him, pinned against the wall, while he tried to activate his radio with his other hand. Mr. Leaver kept hitting him and reaching for his gun, so he was unable to reach his radio. Deputy Conley, who had wrestled in high school, testified that he eventually grabbed one of Mr. Leaver's pant legs and took him to the floor. They fell together into a metal bench that was along the wall of the cell, and Deputy

Conley ended up on top. He testified that he speared the top of his head into Mr. Leaver's body and braced his feet against the opposite wall of the cell to keep Mr. Leaver pinned down. He was finally able to use his radio to call for help and stayed in that position until help arrived.

{¶8} According to Mr. Leaver, he started picking on Deputy Conley because the deputy was rude and teased him. He said that, when his ride arrived at the district office, Deputy Conley shoved his belongings through the door of the cell and then opened the door. He picked up his belongings and started to leave the cell, but Deputy Conley suddenly grabbed him by the neck and ran him backwards into the wall of the cell. Mr. Leaver testified that Deputy Conley started punching him and knocked him to the floor. He testified that he attempted to defend himself and started yelling for help. He thought that Deputy Conley attacked him because he was angry about the insulting things he had said to the deputy.

{¶9} Sergeant Michael Walsh testified that he was the first one to return to the office. He said that, when he got to the cell, he saw Mr. Leaver pressed into the corner with Deputy Conley lying on top of him. Mr. Leaver had an arm over Deputy Conley's face, but he put his arms up as soon as the sergeant pointed a taser at him. Sergeant Walsh said that he walked over to put handcuffs on Mr. Leaver and told Deputy Conley that he could get up, but it took a couple of times before Deputy Conley responded to his voice.

{¶10} Deputy Christopher Rhoades testified that he was the second officer to arrive back at the office. He estimated that he arrived about 15 seconds after Sergeant Walsh, because he saw Sergeant Walsh pull into the parking lot as he was arriving at the office himself. He testified that, when he reached the holding cell, he saw Sergeant Walsh on top of Deputy Conley, who was on top of Mr. Leaver. He also testified that Sergeant Walsh was attempting to get Deputy Conley off of Mr. Leaver and that Deputy Conley finally let go after hearing his voice.

## MUTED VIDEO

{¶11}  Mr. Leaver's first assignment of error is that the trial court incorrectly refused to let the jury watch an unedited video of an interview that Sergeant Matthew Paolino conducted with him after the fight.  The trial court, over Mr. Leaver's objection, only allowed the jury to watch the video without sound because it thought that anything Mr. Leaver had said during the interview would be hearsay.  Mr. Leaver has argued that his interview statements were not hearsay because they were not being offered to prove the truth of the matter asserted.  He has argued that the video was only being offered to demonstrate that he had been consistent about what happened between him and Deputy Conley, to document his injuries, and to demonstrate that he was not intoxicated at the time of the fight.

{¶12}  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid. R. 801(C).  Under Evidence Rule 802, "[h]earsay is not admissible except as otherwise provided by . . . these rules . . . ."

{¶13}  After the fight, Mr. Leaver met with Sergeant Paolino, who asked him about what had happened.  Sergeant Paolino testified at trial that Mr. Leaver was still drunk at the time of the interview.  During Sergeant Paolino's cross-examination, Mr. Leaver played the video and asked the Sergeant to indicate what things Mr. Leaver had done during the interview to suggest that he was still intoxicated.  Although Mr. Leaver requested to play the audio along with the video, the trial court refused to allow him to do so.

{¶14}  We conclude that the trial court incorrectly refused to let the jury listen to the interview.  As Mr. Leaver has noted, one of his reasons for showing the video was to challenge Sergeant Paolino's assertion that he was intoxicated.  During the interview, Sergeant Paolino

asked Mr. Leaver to tell him about the fight. Mr. Leaver described what had happened, which included him demonstrating for the sergeant how Deputy Conley had grabbed his neck and how he had pinned him to the floor. Mr. Leaver was in handcuffs during the interview, which impaired his ability to reenact the incident. While Mr. Leaver's actions are coherent when synchronized with his description of the incident, without sound, it could have appeared to the jury that Mr. Leaver was disoriented and was acting in a bizarre and overly demonstrative manner. Furthermore, one of the indicators of intoxication is slurred speech, and the jury was unable to determine whether Mr. Leaver's speech was impaired since it could not hear him. The trial court should have allowed Mr. Leaver to play the unmuted video, and should have instructed the jury that it was being admitted for the limited purpose of demonstrating whether Mr. Leaver was impaired and not for the truth of his assertions on the recording.

{¶15} Before we may overturn any of Mr. Leaver's convictions, we must examine whether the trial court's error was harmless. Crim. R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). The test for harmless error depends on whether the error impinged a defendant's constitutional or nonconstitutional rights. *State v. Skrzynski*, 6th Dist. No. WD-09-027, 2010-Ohio-2579, at 43. If non-constitutional rights are involved, "the burden is on the accused to show that he was or may have been prejudiced . . . while under the constitutional test the burden is on the prosecution to show beyond a reasonable doubt that the error was harmless." *State v. Davis*, 44 Ohio App. 2d 335, 348 (1975). Error in the admission or exclusion of evidence, such as in this case, is usually non-constitutional error. See *State v. Murphy*, 4th Dist. No. 09CA3311, 2010-Ohio-5031, at ¶80 (compiling cases); *State v. Fellows*, 7th Dist. No. 09 JE 36, 2010-Ohio-2699, at ¶25.

**{¶16}** It is not necessary to resolve whether the error in this case was constitutional or non-constitutional because, even applying the more stringent test for non-constitutional error, Mr. Leaver has established that the error affected his substantial rights. We note that, even if it is Mr. Leaver's burden to demonstrate that he "was or may have been prejudiced" by the decision of the trial court to disallow the playing of the video, the burden is not monumental, particularly when compared, for example, to the burden required to support a finding of ineffective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). We have reviewed the entire record and conclude that Mr. Leaver met his burden. Although he is very talkative on the unmuted tape, we have no baseline to gauge his verbal interaction outside of this venue. In contrast to Sergeant Paolino's testimony that Mr. Leaver was intoxicated at the time of the interview, the video showed Mr. Leaver's speech to be clear. He was completely coherent, and most compelling, his demonstrated physical dexterity and balance belied the claims of intoxication. Had the jury been permitted to hear his voice and evaluate his demeanor while viewing the tape, it might well have questioned the credibility of the testimony of the law enforcement witnesses in other areas having critical bearing on the essential elements of the crimes with which Mr. Leaver was charged.

**{¶17}** Because the trial court's refusal to allow Mr. Leaver to play the audio of Sergeant Paolino's entire interview of him affected his substantial rights, the trial court's ruling on the admissibility of the video tape was not harmless error. Mr. Leaver's first assignment of error is sustained. Our disposition of this assignment of error has made Mr. Leaver's second, third, and fifth assignments of error moot, and they are overruled on that basis.

MOTION FOR ACQUITTAL

**{¶18}** Mr. Leaver's fourth assignment of error is that the trial court incorrectly denied his motion for judgment of acquittal. Despite our resolution of Mr. Leaver's first assignment of error, it does not make his sufficiency argument moot. *State v. Denny*, 9th Dist. No. 08CA0051, 2009-Ohio-3925, at ¶12 ("[T]he State is not entitled to retry a criminal defendant after reversal for trial court error if the State failed in the first instance to present sufficient evidence."). Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of his guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

**{¶19}** Mr. Leaver has not challenged his convictions for operating under the influence of drugs or alcohol, possession of marijuana, or weaving. Instead, he has focused his arguments on his convictions for assault under Section 2903.13(A) of the Ohio Revised Code and obstructing official business under Section 2921.31(A) and (B). Under Section 2903.13(A), "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Under Section 2921.31(A), "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or

delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." "If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree." R.C. 2921.31(B). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶20} Mr. Leaver has argued that the State failed to prove the essential elements of his assault and obstructing official business convictions beyond a reasonable doubt. Regarding his assault conviction, Deputy Conley testified that, after he opened the door to the holding cell, Mr. Leaver punched him in the face. He also testified that, after he pinned Mr. Leaver to the wall, Mr. Leaver continued punching him and tried to get his gun out of its holster. The State presented photographs documenting Deputy Conley's injuries. Deputy Conley also denied that Mr. Leaver and he merely accidentally knocked heads as Mr. Leaver was standing up after picking up his belongings. We, therefore, conclude that there was evidence that could have convinced the average fact finder beyond a reasonable doubt that Mr. Leaver knowingly caused or attempted to cause physical harm to Deputy Conley.

{¶21} Regarding Mr. Leaver's conviction for obstructing official business, Deputy Conley testified that, after the fight, he had to go to the hospital to be examined instead of completing Mr. Leaver's paperwork and returning to his patrol car. Accordingly, there was evidence from which the average fact finder could have determined that Mr. Leaver purposely

prevented Deputy Conley from releasing him and continuing with his assigned duties. Mr. Leaver's fourth assignment of error is overruled.

## CONCLUSION

**{¶22}** The trial court should have allowed the jury to listen to Mr. Leaver's interview with Sergeant Paolino and the error affected Mr. Leaver's substantial rights. We reverse Mr. Leaver's convictions for assault, obstructing official business, and operating under the influence of drugs or alcohol, and remand for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

MOORE, J.
CONCURS

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶23} I concur in the judgment as I do not believe that the Ohio Supreme Court has adopted in its entirety the analysis stated in paragraph 15 of the opinion.

DICKINSON, J.
DISSENTS, SAYING:

{¶24} While I agree that the trial court should have allowed the jury to hear Mr. Leaver's interview with Sergeant Paolino for the reasons stated in the lead opinion, Mr. Leaver has not demonstrated that he was prejudiced by its decision. See *State v. Davis*, 44 Ohio App. 2d 335, 348 (1975) (noting that, if nonconstitutional rights are involved, "the burden is on the accused to show that he was or may have been prejudiced[.]"). It was, apparently, Mr. Leaver's position that he only acts inappropriately when intoxicated and that he was not intoxicated at the time of the fight. It is unclear from the testimony, however, how much time passed between when the fight ended and when the interview occurred. Accordingly, even if Mr. Leaver was able to show that he was not intoxicated at the time of the interview, it does not mean that he was not intoxicated at the time of the fight. Mr. Leaver's own testimony was that he could not remember whether it was before or after the fight that he stopped feeling intoxicated.

{¶25} I also note that, even if the video would have discredited Sergeant Paolino, the sergeant did not witness any of the conduct for which Mr. Leaver was convicted. He did not see Mr. Leaver operate a car while intoxicated and did not see him assault Deputy Conley. Rather, he gave background information about the schedule of the officers and the layout of the office and verified that the pictures documenting Deputy Conley and Mr. Leaver's injuries were consistent with what he observed after the fight. Accordingly, Mr. Leaver has failed to establish

that, even if the jury determined Sergeant Paolino was not credible, it would have affected the outcome of his trial.

{¶26}  I further note that the lead opinion overlooks the fact that the jury was eventually able to hear part of the interview.  On cross-examination, Mr. Leaver testified that, after the fight, he tore up the ticket Deputy Conley gave him.  That was inconsistent with what he had told Sergeant Paolino during the interview.  The State, therefore, played the audio from part of the interview, during which Mr. Leaver told the sergeant that it was Deputy Conley who had torn up the ticket.  Although it is not clear from the record how much of the interview the jury was allowed to hear, the sergeant and Mr. Leaver talked about the torn-up ticket for a couple of minutes.  Since Mr. Leaver did not indicate on the record how much of that exchange the jury was allowed to hear, we must presume that it heard all of it.  See *Isquick v. Dale Adams Enters. Inc.*, 9th Dist. No. 20839, 2002-Ohio-3988, at ¶22 ("[I]t is duty of the appellant to ensure . . . that the record is properly preserved for review.").  The jury, therefore, had ample opportunity to listen to Mr. Leaver's speech and determine whether it was slurred at the time of his interview with Sergeant Paolino.

{¶27}  The trial court's refusal to allow Mr. Leaver to play the audio of Sergeant Paolino's entire interview of him did not affect his substantial rights.  I would, therefore, conclude that the trial court's ruling on the admissibility of the video tape was harmless error and address the remaining assignments of error.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.