[Cite as *State v. Hartman*, 2012-Ohio-745.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. Nos. | 10CA0026-M |
|---|---|---|---|
| | | | 10CA0031-M |
| Appellee | | | |
| | | | |
| v. | | APPEAL FROM JUDGMENT | |
| | | ENTERED IN THE | |
| MATTHEW J. HARTMAN | | COURT OF COMMON PLEAS | |
| | | COUNTY OF MEDINA, OHIO | |
| Appellant | | CASE No. 09-CR-0229 | |

DECISION AND JOURNAL ENTRY

Dated: February 27, 2012

---

DICKINSON, Judge.

INTRODUCTION

{¶1} Kimberly Leighton called 911, reporting that Matthew Hartman had entered her house with a gun, looking to hurt his wife, Melissa Hartman, who was hiding with her in one of the bedrooms. By the time deputies arrived, Mr. Hartman was outside the house, talking with Roy Leighton on the driveway, having a beer. The Grand Jury indicted Mr. Hartman for aggravated burglary, a jury found him guilty of that offense, and the trial court sentenced him to five years in prison. Mr. Hartman has appealed, arguing that the trial court incorrectly admitted other acts testimony, that it incorrectly allowed the prosecutor to select the underlying offense for his conviction, that it failed to instruct the jury on the lesser-included offense of trespass, that it denied him a fair trial by allowing the jury to hear the entire 911 tape, that it denied his right to confrontation, and that it incorrectly denied his motion for new trial. He has also argued that the prosecutor engaged in misconduct. We reverse because the trial court should not have allowed

the jury to hear an unredacted recording of Mrs. Leighton's 911 call and the admission of her hearsay statements prejudiced Mr. Hartman.

FACTS

{¶2} On May 27, 2009, the Hartmans visited Mr. Hartman's mother in the hospital, then went to a restaurant. During the meal, the Hartmans got into an argument, which continued in their minivan after they left. At one point, Mr. Hartman threatened to drive the van into a concrete barrier, causing Mrs. Hartman to grab the steering wheel. The argument became physical, with Mr. Hartman placing Mrs. Hartman in a headlock and Mrs. Hartman biting and hitting him until they were broken-up by their 6-year-old daughter.

{¶3} Either because he had to take care of his parents' house while his mother was in the hospital and his father was out of town or because Mrs. Hartman would not let him come home after their fight, Mr. Hartman drove to his parents' house and got out of the van. Mrs. Hartman got the keys and left, but instead of going home, she drove to the Leightons' house, which was about a mile away. According to Mrs. Hartman, she was too upset to drive to their house, which was in a different county, and the Leightons had been friends of theirs for many years.

{¶4} The Leightons testified that, when Mrs. Hartman arrived at their house, the children and she were frantic, claiming that Mr. Hartman was after them. They brought everyone into the house and were attempting to figure out what was going on when Mr. Hartman pulled into their driveway on an all-terrain vehicle, wearing a gun in a holster. The Leightons hurried everyone to a back bedroom and got out their own guns. Mrs. Leighton testified that, as she was going into the bedroom, she looked back and saw Mr. Hartman enter the house through a back door. Mr. Leighton did not see Mr. Hartman enter the house, but testified that, as he

stepped out of his bedroom, Mr. Hartman was standing in the hallway right by the door. Mr. Leighton pointed his gun at Mr. Hartman and told him to go outside. Mr. Hartman told Mr. Leighton that his gun was not for his family, but complied with the order. According to Mr. Leighton, when they got out to the driveway, he unloaded Mr. Hartman's gun. After Mr. Hartman and he talked for awhile and had a beer, Mr. Hartman got back on the all-terrain vehicle to leave. At that point, deputies, who had concealed themselves on the property, emerged and arrested Mr. Hartman.

## OTHER ACTS TESTIMONY

{¶5} Mr. Hartman's first assignment of error is that the trial court incorrectly admitted other acts evidence in violation of the Ohio rules of evidence and his constitutional rights. He has noted that the court allowed the prosecution to ask Mrs. Hartman about a previous incident involving domestic violence and about a civil protection order that she had obtained against him. Mr. Hartman has argued that the court should not have allowed the questions because Mrs. Hartman was the prosecution's witness, because a prosecutor said before trial that he would not introduce the evidence, because the evidence was not admissible under Rule 404(B) of the Ohio Rules of Evidence, and because, even if it was admissible, the prejudicial effect of the evidence greatly outweighed its probative value.

{¶6} On direct examination, Mrs. Hartman testified that Mr. Hartman and she were not separated and that he did not need permission from her to go to their house. The prosecutor attempted to impeach her by asking her whether she had gotten a civil protection order against Mr. Hartman, but Mrs. Hartman explained that it had been lifted. Later, Mrs. Hartman denied that she had ever been afraid of Mr. Hartman. The prosecutor impeached her by asking about the civil protection order, noting that, to obtain one, she would have had to allege that she was afraid

of Mr. Hartman. He also asked her about the details of a 2004 incident in which she went to her mother's house after an argument and Mr. Hartman followed her and attempted to enter the house. After being reminded of the incident, Mrs. Hartman conceded that she had been afraid of her husband that time, but only "just for a moment."

{¶7} Regarding Mr. Hartman's argument that the prosecution should not have been allowed to impeach Mrs. Hartman because she was the State's own witness, Rule 607(A) of the Ohio Rules of Evidence provides that "[t]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." "The . . . purpose of this rule is to prevent a party from calling a witness with the sole purpose of impeaching that witness by her prior, out-of-court statements, which would otherwise be inadmissible." *State v. Foster*, 2d Dist. No. Civ. A. 2004-CA-19, 2005-Ohio-439, at ¶ 92; *see* Evid. R. 607 staff note (1980) ("Rule 607 abolishes the general principle, preserving the 'voucher rule' in those limited cases in which impeachment by the party calling the witness is predicated upon a prior inconsistent statement unless surprise and affirmative damage can be shown. Otherwise, the party would be entitled to call a known adverse witness simply for the purpose of getting a prior inconsistent statement into evidence by way of impeachment, thus doing indirectly what he could not have done directly.").

{¶8} Because the prosecutor's questions about the 2004 incident at Mrs. Hartman's mother's house did not involve the use of a prior inconsistent statement, he was allowed to ask Mrs. Hartman about the incident under Evidence Rule 607(A). While his questions about the civil protection order did involve a prior inconsistent statement, namely, what Mrs. Hartman told a magistrate, Mr. Hartman did not object to those questions. Accordingly, he has forfeited all but

plain error. *State v. Gaiter*, 9th Dist. No. 24758, 2010-Ohio-2205, at ¶ 18. "Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Long*, 53 Ohio St. 2d 91, paragraph two of the syllabus (1978). In this case, Mr. Hartman's failure to object to the prosecutor's questions about the civil protection order deprived the State of the opportunity to establish surprise and affirmative damage. Evid. R. 607(A). Accordingly, we cannot say that it was plain error for the court to allow the prosecutor to ask Mrs. Hartman about the civil protection order.

{¶9} Regarding Mr. Hartman's argument that the prosecutor said he would not introduce the evidence, Mr. Hartman has directed this Court to a conversation that the parties had before trial in which the prosecutor said that he would not introduce one of Mr. Hartman's prior misdemeanor convictions in his case-in-chief. It is not clear from the exchange what conviction the parties were discussing and whether it arose from the 2004 incident. Even if they were talking about a conviction that followed that incident, the prosecutor merely asked Mrs. Hartman about what had happened, not whether Mr. Hartman had been convicted of any crimes for his actions.

{¶10} Regarding whether the other acts evidence was admissible under Rule 404(B) of the Ohio Rules of Evidence, this Court notes that the prosecutor did not submit a copy of the civil protection order or a judgment of conviction arising out of the 2004 incident, he only asked Mrs. Hartman about those things to impeach her testimony about whether Mr. Hartman and she were separated and whether she had ever been in fear of Mr. Hartman. Under Evidence Rule 404(B), "[e]vidence of other . . . acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes" such as impeachment. *State v. Young*, 10th Dist. No. 04AP-797, 2005-Ohio-5489, at ¶ 24-25

(concluding that, after the girlfriend of the defendant testified that the defendant and she did not get into fights, the State was allowed to impeach her with a police report she had completed indicating that he had assaulted her).

{¶11} To the extent that Mr. Hartman has argued that the trial court improperly gave an other acts jury instruction in which it told the jury it could consider the evidence as proof of Mr. Hartman's motive, we note that the court asked Mr. Hartman's lawyer what language she wanted the court to use for the instruction and the lawyer told the court to "go with motive." Accordingly, Mr. Hartman invited any error regarding the instruction. Finally, regarding Mr. Hartman's argument that the evidence should not have been allowed under Evidence Rule 403 because it was more prejudicial than probative, we note that a trial court has broad discretion under that rule. *State v. Lang*, 129 Ohio St. 3d 512, 2011-Ohio-4215, at ¶ 87. We have reviewed the record and conclude that it exercised proper discretion when it allowed the prosecutor to impeach Mrs. Hartman by asking her about the civil protection order and the 2004 incident. Mr. Hartman's first assignment of error is overruled.

UNDERLYING OFFENSE

{¶12} Mr. Hartman's third assignment of error is that the trial court incorrectly allowed the prosecutor to select the criminal offense needed to support his conviction for aggravated burglary. Under Section 2911.11(A)(2) of the Ohio Revised Code, "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure . . . when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense, if . . . [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." Mr. Hartman has argued that the indictment was defective because it was the Grand Jury who had to decide which "criminal

offense" he had the purpose of committing inside the Leightons' house. According to Mr. Hartman, because he did not know the crime that he was accused of intending to commit, it put him at a disadvantage in preparing his defense.

{¶13} The Ohio Supreme Court has held that an indictment for aggravated burglary does not need to allege the particular crime that the defendant intended to commit. *State v. Foust*, 105 Ohio St. 3d 137, 2004-Ohio-7006, at ¶ 31. In addition, Mr. Hartman received a list of the possible offenses a month before trial. His third assignment of error is overruled.

### LESSER-INCLUDED OFFENSE INSTRUCTION

{¶14} Mr. Hartman's fourth assignment of error is that the trial court incorrectly refused to give the jury an instruction on the lesser-included offense of criminal trespass. The court, however, did give a lesser-included offense instruction for burglary, which is a more serious offense than criminal trespass, but a less serious offense than aggravated burglary. The Ohio Supreme Court has held that, if a jury convicts a defendant of the most serious offense despite having received a lesser-included offense instruction, the trial court's failure to give an instruction for an even less serious offense is harmless error. *State v. Conway*, 108 Ohio St. 3d 214, 2006-Ohio-791, at ¶ 139 (determining that jury's rejection of lesser-included offense option shows that they would also have rejected a still lesser offense); *see State v. Trimble*, 122 Ohio St. 3d 297, 2009-Ohio-2961, at ¶ 197 (concluding that, even if trial court's refusal to instruct on reckless homicide was error, it was harmless because the jury could have found defendant guilty of involuntary manslaughter instead of aggravated murder). Mr. Hartman's fourth assignment of error is overruled.

## 911 TAPE

{¶15} Mr. Hartman's fifth assignment of error is that the trial court incorrectly allowed the jury to hear an unredacted recording of Mrs. Leighton's 911 call because it contained inadmissible hearsay and other inflammatory character evidence. According to Mr. Hartman, the court should not have allowed the jury to hear such irrelevant and highly prejudicial evidence.

{¶16} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Under Evidence Rule 802, "[h]earsay is not admissible except as otherwise provided by . . . these rules . . . ." "Whether evidence is admissible because it falls within an exception to the hearsay rule is a question of law, thus, our review is de novo." *State v. Truitt*, 9th Dist. No. 25527, 2011-Ohio-6599, at ¶ 24 (quoting *Monroe v. Steen*, 9th Dist. No. 24342, 2009–Ohio-5163, at ¶ 11).

{¶17} Mrs. Leighton testified that she saw Mr. Hartman pull up her driveway on an all-terrain vehicle and later "saw him coming in the door, the back door, through our mudroom into our home." Although she only ever saw Mr. Hartman from a distance and did not speak with him, she told the 911 dispatcher that Mr. Hartman was probably on heroin and cocaine, that he is a very volatile man, that he has a lot of mental health issues, that he is bi-polar and does methamphetamine, that he beat and head-locked Mrs. Hartman, that the Hartmans are separated and that there is a restraining order out on him, that Mr. Hartman came at Mr. Leighton with a gun, that Mr. Hartman has "something on his brain," that Mr. Hartman is evil, and that he had threatened to kill police officers earlier that day.

{¶18} The State has argued that Mrs. Leighton's statements to the dispatcher were admissible under an exception to the hearsay rule because they were present-sense impressions

or excited utterances. Under Evidence Rule 803(1), a present-sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter[.]" Such statements are not excluded under the hearsay rule "unless circumstances indicate lack of trustworthiness." Evid. R. 803(1). The staff notes to the rule explain that the "circumstantial guaranty of trustworthiness [of the statement] is derived from the fact that [it] is contemporaneous and there is little risk of faulty recollection[.]" Mrs. Leighton's comments were not admissible under that exception, however, because she was confined in a room away from Mr. Hartman and was not relating what she had just perceived. Rather, she was merely stating her opinion of Mr. Hartman based on her past interactions with him and what Mrs. Hartman told her had happened earlier that day.

{¶19} Mrs. Leighton's statements were also not excited utterances. Under Evidence Rule 803(2), an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "One of the requisites necessary to invoke the excited utterance exception is the declarant's 'opportunity to observe personally the matters asserted in his statement or declaration.'" *State v. Smith*, 97 Ohio St. 3d 367, 2002-Ohio-6659, at ¶ 44 (quoting *Potter v. Baker*, 162 Ohio St. 488, paragraph two of the syllabus (1955)). Since Mrs. Leighton did not personally observe whether Mr. Hartman was on drugs during the incident, whether he was experiencing mental health problems, whether he had attacked Mrs. Hartman, or whether he had threatened to harm law enforcement officers, those statements were not admissible under Evidence Rule 803(2). In addition, Mrs. Leighton's knowledge that Mrs. Hartman had obtained a protection order against Mr. Hartman and her opinion that Mr. Hartman is "evil" were not observations that Mrs.

Leighton could have made during the incident. Accordingly, they were also not admissible as excited utterances.

{¶20} Although the trial court incorrectly allowed the jury to hear an unredacted recording of the 911 call, this Court may not reverse Mr. Hartman's convictions if the mistake was harmless error. Crim. R. 52(A). Furthermore, because the error affected only Mr. Hartman's non-constitutional rights, it is his burden to show that he may have been prejudiced by the tape's admission. *State v. Leaver*, 9th Dist. No. 25339, 2011-Ohio-4068, at ¶ 15.

{¶21} To convict Mr. Hartman of aggravated burglary, the State had to prove that he entered the Leightons' house with the purpose of committing a crime inside of it. The jury was presented with five possibilities, and they determined that Mr. Hartman had the purpose of committing disorderly conduct, the least serious of those offenses. Under Section 2917.11(A) of the Ohio Revised Code, a person commits disorderly conduct by "recklessly caus[ing] inconvenience, annoyance, or alarm to another by doing any of the following: (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior; (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person; (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response; (4) Hindering or preventing the movement of persons on a public street, . . . so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender; [or] (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender."

{¶22} Mrs. Leighton's statements to the 911 dispatcher that Mr. Hartman has drug abuse and mental health problems were not corroborated by any other evidence. The statements, however, were inflammatory and may have colored the jury's view of Mr. Hartman. They also may have affected whether the jury thought Mr. Hartman was the sort of man who would purposely charge into another person's house in an attempt to hurt his family. Accordingly, we cannot say that the admission of the statements was harmless. *See State v. Leaver*, 9th Dist. No. 25339, 2011-Ohio-4068, at ¶ 16 (noting that defendant's burden under Criminal Rule 52(A) "is not monumental[.]"). Mr. Hartman's fifth assignment of error is sustained.

## CROSS-EXAMINATION

{¶23} Mr. Hartman's sixth assignment of error is that the trial court incorrectly limited his cross-examinations of Mr. and Mrs. Leighton and Deputy Frank Telatko, impairing his constitutional right to confrontation. He has argued that he should have been allowed to explore Mrs. Leighton's family history of abuse, her mental health history, and any bias she might have against him. He has also argued that he should have been allowed to ask Mr. Leighton about the statements he made to sheriff's deputies after Mr. Hartman was arrested. He has further argued that he should have been allowed to ask Deputy Telatko about the exculpatory statements he made immediately after his arrest and about the deputy's knowledge of the law regarding making a warrantless arrest.

{¶24} This Court has reviewed the transcript of the testimony of Mr. Leighton and Deputy Telatko and is unable to find any place at which the trial court prevented Mr. Hartman from asking Mr. Leighton about what he told the arresting deputies, prevented him from asking Deputy Telatko about what he said after his arrest, or prevented him from asking the deputy

about his knowledge of the law. Considering that Mr. Hartman has not provided any page numbers in his brief, we must conclude that those alleged errors did not occur.

{¶25} Regarding Mr. Hartman's cross-examination of Mrs. Leighton, the United States Supreme Court has explained that "[t]he Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, . . . 'means more than being allowed to confront the witness physically.' . . . Indeed, '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' . . . Of particular relevance here, '[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' . . . It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)).

{¶26} Following the trial, Mr. Hartman moved for a new trial and submitted an affidavit from his lawyer, indicating that, but for the prosecutor's sustained objections, she would have asked Mrs. Leighton about her mental health issues and the medications that she takes for those issues. She also would have asked about the abusive household she was raised in. According to

Mr. Hartman's lawyer, it was the environment in which Mrs. Leighton was raised that caused her to overreact to the events of May 27, 2009.

{¶27} We have already noted the prejudicial effect that testimony about a witness's mental health and drug use may have on a jury. Having reviewed the record, we conclude that the trial court exercised proper discretion when it prevented Mr. Hartman from asking Mrs. Leighton about those issues. Mr. Hartman's sixth assignment of error is overruled.

## OTHER ISSUES

{¶28} Mr. Hartman's second assignment of error is that the prosecutor committed repeated acts of misconduct, depriving him of a fair trial. His seventh assignment of error is that the trial court incorrectly denied his motion for new trial. In light of our determination that the trial court incorrectly allowed the jury to hear an unredacted recording of the 911 call, these assignments of error are moot. We note that, to the extent any of the prosecutor's actions were improper, we have addressed similar issues in other recent opinions and are confident that the issues will not be repeated should Mr. Hartman be retried. *See State v. Johnson*, 9th Dist. No. 09CA0054-M, 2011-Ohio-3623; *State v. Gatt*, 9th Dist. No. 10CA0108-M, 2011-Ohio-5221. Mr. Hartman's second and seventh assignments of error are overruled.

## CONCLUSION

{¶29} The trial court incorrectly allowed the jury to hear an unredacted recording of Mrs. Leighton's 911 call, and Mr. Hartman has established that he was prejudiced by the admission of her hearsay statements. The judgment of the Medina County Common Pleas Court is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P.J.
CONCURS IN JUDGMENT ONLY

CARR, J.
DISSENTS, SAYING:

{¶30} I respectfully dissent. I would not reach the issue of error in regard to the admission of the 911 call. Because there was overwhelming evidence to establish Hartman's guilt, error in the call's admission, if any, was harmless. Accordingly, I would affirm his conviction.

APPEARANCES:

ROBERT A. DIXON,  Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.