[Cite as *State v. Hartman*, 2013-Ohio-4407.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

MATTHEW HARTMAN

    Appellant

C.A. No.     12CA0057-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    09CR0229

DECISION AND JOURNAL ENTRY

Dated: October 7, 2013

---

BELFANCE, Judge.

{¶1}   Defendant-Appellant Matthew Hartman appeals from his conviction in the Medina County Court of Common Pleas. For the reasons set forth below, we affirm in part, reverse in part, and remand the matter.

I.

{¶2}   On May 27, 2009, Mr. Hartman was having dinner with his wife, Melissa Hartman, and their children. During the course of the meal, Mr. and Mrs. Hartman began to argue about whether Mr. Hartman should have another beer. The argument continued as Mr. Hartman drove the family to his parents' home. During the drive, the argument became more heated and physical. When they reached Mr. Hartman's parents' home, Mr. Hartman exited the vehicle and threw the keys. Mrs. Hartman retrieved the keys and drove to the nearby home of Kimberly and Al Leighton who were long-time friends of Mr. and Mrs. Hartman. In the past, Mr. Hartman often hunted with Mr. Leighton on Mr. Leighton's and other nearby properties.

Upon arrival at the Leighton's, Mrs. Hartman and the children were upset, and Mrs. Hartman maintained that Mr. Hartman was after her. Shortly thereafter, Mr. Hartman arrived at the Leighton's home on an ATV. Mr. Hartman had a gun in a holster strapped across his chest. Upon seeing Mr. Hartman, and seeing Mrs. Hartman's reaction to seeing Mr. Hartman, Mr. Leighton ushered his wife and Mrs. Hartman and the children into the Leighton's bedroom. Mr. Leighton told his wife to call 911, which she did.

{¶3} Mr. Hartman entered the Leighton home. Mr. Leighton encountered Mr. Hartman as Mr. Leighton was exiting the bedroom. Mr. Leighton pointed a gun at Mr. Hartman and told him that, "this isn't going to happen in my house." The two went outside, Mr. Leighton took the gun from Mr. Hartman and unloaded it, and then they began to talk. At one point, Mr. Leighton allowed Mr. Hartman to go inside and attempt to talk to his wife and get a beer. Before Mr. Hartman went to leave, Mr. Leighton returned the unloaded weapon to Mr. Hartman. As Mr. Hartman got on his ATV, police, who had been observing the two talking from a nearby property, arrested Mr. Hartman.

{¶4} Based upon that incident, Mr. Hartman was indicted on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a first-degree felony. Mr. Hartman filed a motion to suppress which was orally denied following a hearing. The matter proceeded to a jury trial, after which, a jury found Mr. Hartman guilty of aggravated burglary. The trial court sentenced Mr. Hartman to five years in prison. Mr. Hartman appealed, and this Court reversed his conviction based upon the prejudicial admission of the entire 911 call. *See State v. Hartman,* 9th Dist. Medina Nos. 10CA0026-M, 10CA0031-M, 2012-Ohio-745, ¶ 29. Subsequently, Mr. Hartman was retried, and a jury again found him guilty of aggravated burglary. Mr. Hartman was again

sentenced to five years in prison. Mr. Hartman has appealed, raising 18 assignments of error for our review, which will be addressed out of sequence to facilitate our review.

II.

ASSIGNMENT OF ERROR X

THE COURT COMMITTED REVERSIBLE ERROR BY ADMITTING AND FAILING TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF HARTMAN'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH, FIFTH, AND SIXTH AMENDMENTS, IN THAT THE EVIDENCE WAS THE PRODUCT OF AN UNLAWFUL ARREST AND DETENTION BECAUSE THE DEPUTIES NEVER SUBMITTED OR SWORE TO A PROBABLE CAUSE AFFIDAVIT.

{¶5} Mr. Hartman asserts in his tenth assignment of error that the trial court erred in failing to grant his motion to suppress. Because Mr. Hartman is precluded from raising this issue at this point in time, we overrule his assignment of error.

{¶6} "The doctrine of law of the case 'provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" *State v. Chapman,* 190 Ohio App.3d 528, 2010-Ohio-5924, ¶ 7 (9th Dist.), quoting *Nolan v. Nolan,* 11 Ohio St.3d 1, 3 (1984). "The doctrine is considered a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Hubbard ex rel. Creed v. Sauline,* 74 Ohio St.3d 402, 404 (1996). *See also State v. Fischer*, 128 OhioSt.3d 92, 2010-Ohio-6238, ¶ 35 (noting that the law-of-the-case doctrine is "rooted in principles of res judicata and issue preclusion"). Thus, the doctrine has been applied to preclude a litigant "'from attempting to rely on arguments at a retrial [that] were fully pursued, or available to be pursued, in a first appeal.'" *Chapman* at ¶ 7, quoting *Hubbard,* at 404–405.

{¶7}    Mr. Hartman filed a motion to suppress prior to his first trial.  A hearing was conducted, and the trial court overruled his suppression motion.  Mr. Hartman could have raised the issue he now raises as a challenge to the trial court's ruling on his motion to suppress in his first appeal, but he did not do so.  Because he did not raise the issue in his first appeal, this argument is subject to issue preclusion pursuant to the law of the case doctrine.  *See Chapman* at ¶ 8.  Mr. Hartman's tenth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

THE TRIAL COURT  COMMITTED REVERSIBLE DOUBLE JEOPARDY ERROR BY SUBJECTING HARTMAN TO A SECOND TRIAL, WHEN THE STATE, DURING THE FIRST TRIAL, FAILED TO PROVE THAT A FIREARM WAS OPERABLE AND SHOULD NOT HAVE BEEN GIVEN A SECOND CHANCE TO PROVE THE ESSENTIAL ELEMENT.

{¶8}    Mr. Hartman asserts in his seventh assignment of error that the trial court violated his right against double jeopardy by retrying him when his initial conviction was based upon insufficient evidence.  We do not agree.  Mr. Hartman's double jeopardy argument is properly before us in this appeal.  However, the premise underlying his argument (i.e. that his first trial was based upon insufficient evidence) is subject to issue preclusion pursuant to the law of the case doctrine, and accordingly, we overrule Mr. Hartman's seventh assignment of error.

{¶9}    "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect criminal defendants against multiple prosecutions for the same offense." *State v. Brewer,* 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 14.  Each clause "prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Gustafson,* 76 Ohio St.3d 425, 432 (1996).  "While the Double Jeopardy Clause protects a defendant from successive prosecutions for a single

offense, society also has an interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." (Internal quotations and citation omitted.) *Brewer* at ¶ 16. Thus, "the United States Supreme Court has long recognized that double jeopardy will not bar retrial of a defendant who successfully overturns his conviction on the basis of trial error, through either direct appeal or collateral attack." *Id.* However, the Double Jeopardy Clause *does* bar "retrial when an appellate court reverses a conviction based solely upon the sufficiency of the evidence * * * [because] such a reversal is the equivalent of a judgment of acquittal, which affords the defendant absolute immunity from further prosecution for the same offense." *Id.* at ¶ 18.

{¶10} Notably, Mr. Hartman's first conviction was not reversed based upon a finding of insufficient evidence. Instead, Mr. Hartman's conviction was reversed because of the admission of inadmissible and prejudicial hearsay testimony. *See Hartman,* 2012-Ohio-745, at ¶ 29. Thus, on its face, our decision does not appear to bar Mr. Hartman's retrial. *See Brewer* at ¶ 16, 18. Nonetheless, and despite the fact that Mr. Hartman did not assert in his first appeal that the evidence was insufficient to sustain a guilty verdict, Mr. Hartman argued in the trial court, and in the current appeal, that his right against double jeopardy was violated because insufficient evidence was presented in his first trial. However, because Mr. Hartman could have challenged the sufficiency of the evidence presented in the first trial in his first appeal, he is now barred from making that argument. *See Chapman,* 190 Ohio App.3d 528, 2010-Ohio-5924, at ¶ 7. Thus, because Mr. Hartman's conviction was reversed for the admission of improper evidence, double jeopardy does not bar his retrial. *See Brewer* at ¶ 16. Accordingly, we overrule Mr. Hartman's seventh assignment of error.

ASSIGNMENT OF ERROR VI

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED HARTMAN'S CONSTITUTIONAL RIGHTS AGAINST DOUBLE JEOPARDY BY SUBJECTING HARTMAN TO A SECOND TRIAL ON CHARGES FOR WHICH THE JURY AT THE FIRST TRIAL HAD ACQUITTED HIM.

{¶11} Mr. Hartman asserts in his sixth assignment of error that his second trial violated his right against double jeopardy because he was subjected to trial for charges for which he was previously acquitted. Specifically, Mr. Hartman maintains that, in the process of finding Mr. Hartman guilty of aggravated burglary in the first trial, because the jury concluded (via a special verdict form) that Mr. Hartman intended to commit disorderly conduct inside the Leighton residence, and made no other findings, that it implicitly acquitted him of the other crimes the State asserted that Mr. Hartman intended to commit in the residence. We do not agree.

{¶12} The only charge Mr. Hartman faced upon retrial was for aggravated burglary. Mr. Hartman was never acquitted of that charge. Instead, a jury found Mr. Hartman guilty of aggravated burglary following his first and second trials. Thus, there have been no charges that Mr. Hartman was once acquitted of and then subsequently retried. Further, we explained above why Mr. Hartman's second trial for aggravated burglary did not violate the general principles involving double jeopardy.

{¶13} Mr. Hartman attempts to analogize his situation to situations involving lesser included offenses. In cases involving lesser included offenses, a conviction on a lesser-included offense will normally operate as an acquittal of the greater offense, thereby barring a retrial of the greater offense. *See State v. Edmonson,* 92 Ohio St.3d 393, 395 (2001), citing *Brown v. Ohio,* 432 U.S. 161 (1977). Thus, in those situations, the defendant is implicitly acquitted of the greater offense. We cannot say that Mr. Hartman's situation is analogous. Mr. Hartman's

situation does not involve lesser included offenses; instead, it involves alternate theories concerning one element of the charged offense. We reiterate that the trier or fact did not implicitly or explicitly acquit Mr. Hartman of the only offense for which he was indicted.

{¶14} Mr. Hartman points to the special verdict form from the first trial that listed five offenses and asked the jury to "circle the offense(s), if any, you unanimously find the defendant had the purpose to commit beyond a reasonable doubt[.]" The jury only circled disorderly conduct. Thus, Mr. Hartman asserts that the jury "acquitted" him of the other listed offenses, and the State could only retry Mr. Hartman for aggravated burglary under the theory that he intended to commit disorderly conduct. At best, Mr. Hartman's assertion is actually a claim that he was implicitly "acquitted" of four means or theories underlying how one element of aggravated burglary was satisfied. Aside from arguments in Mr. Hartman's seventh assignment of error, he does not generally assert that the State was barred from retrying Mr. Hartman for aggravated burglary. Mr. Hartman has not provided this Court with any case law supporting the idea that double jeopardy impacts *how* a State may retry a defendant for a crime that the State is permitted to re-prosecute. The Double Jeopardy Clause bars "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Gustafson,* 76 Ohio St.3d at 432. Mr. Hartman was only ever prosecuted for aggravated burglary, and we explained above why Mr. Hartman's second prosecution for aggravated burglary following a conviction for that same offense did not violate double jeopardy. The jury was charged with the task of reaching a verdict concerning the charge of aggravated burglary—its determination of the means by which it concluded the offense was committed is not tantamount to reaching a separate "verdict" to which double jeopardy

attaches. Based upon Mr. Hartman's argument and the law he has submitted in support of that argument, we see no merit in it. Mr. Hartman's sixth assignment of error is overruled.

ASSIGNMENT OF ERROR XIII

DESPITE PREVIOUS WARNINGS FROM THIS APPELLATE COURT IN *HARTMAN I,* THE STATE COMMITTED REVERSIBLE ERROR BY REPEATED ACTS OF PROSECUTORIAL MISCONDUCT THAT PERVADED THE ENTIRE TRIAL AND AGAIN DENIED HARTMAN A FAIR TRIAL, BY ASSERTING FACTS THE EVIDENCE CONTRADICTED, DENIGRATING HARTMAN AND HIS DEFENSE COUNSEL, AND ASSERTING PERSONAL OPINIONS.

{¶15} Mr. Hartman asserts in his thirteenth assignment of error that he was denied his constitutionally protected right to a fair trial because of misconduct by the prosecutor. Viewing the entirety of the prosecutors' closing argument in the context of the entire trial, we agree.

{¶16} We note that in the prior appeal, Mr. Hartman alleged prosecutorial misconduct during his first trial. *See Hartman,* 2012-Ohio-745, at ¶ 28. We stated that we had "addressed similar issues in other recent opinions and are confident that the issues will not be repeated should Mr. Hartman be retried." *Id.*

{¶17} "When a defendant alleges that remarks by the prosecutor during closing argument denied him a fair trial, we consider 'whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Cleland,* 9th Dist. Medina No. 09CA0070-M, 2011-Ohio-6786, ¶ 32, quoting *State v. Smith,* 14 Ohio St.3d 13, 14 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981).

> Although the State is generally accorded a certain degree of latitude during closing argument, "[t]he prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury."

*State v. Labriola,* 9th Dist. Medina No. 12CA0030-M, 2013-Ohio-2604, ¶ 26, quoting *Smith* at 13-14. "The prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument." *State v. Treesh,* 90 Ohio St.3d 460, 466 (2001). However, "the prosecution must avoid insinuations and assertions which are calculated to mislead the jury." *Smith* at 14. Additionally, "[i]t is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." *Id.* Moreover, "[i]t is improper [for the prosecution] to denigrate defense counsel in the jury's presence." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 304. "[A] conviction based solely on the inflammation of fears and passions, rather than proof of guilt, requires reversal * * *." *State v. Williams,* 23 Ohio St.3d 16, 20 (1986).

{¶18} The Ohio Supreme Court in *Smith* concluded that reversible error occurred in a situation in which, during closing argument, "the assistant prosecutor referred to defense evidence as 'lies,' 'garbage,' 'garbage lies,' '[a] smoke screen,' and 'a well conceived and well rehearsed lie[,]'" and additionally "intimated that defense counsel had suborned perjury by manufacturing, conceiving and fashioning lies to be presented in court." *Smith,* 14 Ohio St.3d at 14. The Supreme Court noted that there was no evidence in the record to support the accusations. *Id.*

{¶19} Unfortunately, we face a similar situation in the instant matter. While there are several improper (and unobjected to) comments from the State during its initial closing argument (asserting that the testimony of a defense witness was disingenuous and not credible and that defense theories were preposterous and essentially garbage), the improper comments and inferences continued to mount during the State's rebuttal. The record reflects that the State's rebuttal is rife with argument that is disrespectful and disparaging of defense counsel, defense

witnesses, and defense theories of the case. The tone is clearly inflammatory. The State repeatedly impugns the integrity of defense counsel, accusing her of (1) mischaracterizing the evidence, (2) telling the jury "everything about the evidence that it was not[,]" and (3) seeking to intentionally mislead the jury. Additionally, the State accuses defense witnesses and defense counsel of lying. For example, when responding to the testimony that defense witnesses offered about the condition of the Leightons' door when they would visit, the State stated that "[p]eople don't leave their doors open, as much they want to put on ridiculous testimony and lies * * * to say that door was wide open every time I entered their premises, absolutely, definitely." The State went on to assert that, if that were true, the defense witness who photographed much of the scene would have taken a picture of the door being open, and because there was no picture, "that's how you know that's a lie." Further, when discussing Deputy Clinage's recollection of the unrecorded statement that Mr. Hartman made to police, the State asserted that because a certain fact was not in the statement, that the fact was "something they made up later * * *." The State went on to comment, "And the difference in the State's – what the State presented you and what the defense presented you is our evidence actually makes sense and it fits, every single thing, including his statement, even though, even though he lied in his statement and tried to say he was going groundhog hunting." Ultimately, it was the State's repeated comments about lies and mischaracterization of the evidence that led defense counsel to finally object during a sidebar. Defense counsel correctly pointed out that "it is improper to say a witness lied and to say an attorney is lying or misleading." Nonetheless, the trial court, while expressing concern that the prosecutor was possibly making references to matters that were not in evidence, overruled the objection and the assistant prosecutor's inappropriate comments continued.[1] The

---

[1] Defense counsel made no subsequent objections during closing argument. Given the

State went on to accuse Mrs. Hartman of attempting to mislead the jury and stated that "she is not being honest about what happened that day[,]" and that she "tried to make you believe this time frame that wasn't true[.]" The State again asserted that Mr. Hartman's statement to Deputy Clinage that he was going over the Leighton's to go groundhog hunting was "not true[]" essentially because Mr. Leighton, the State's witness, did not testify to that.

{¶20} Thus, the State repeatedly argued that witnesses were lying, that defense theories were ridiculous, and that defense counsel was mischaracterizing the evidence. It is true that the parties presented competing views of the evidence: the Leightons were clear that Mr. Hartman did not have permission to be in their home and that they had a falling out with him; however, the defense presented testimony that it was common practice for friends of the Leightons to come over to their house unannounced and enter the home in the manner Mr. Hartman did. This conflict in the evidence is to be resolved by the jury, not the prosecutor's assessment that the defense witnesses must be lying because their version of events is ridiculous in the eyes of the State. We note that even the State's concluding remarks are problematic: the State summarized stating that "[n]othing, nothing they have presented to you makes any sense whatsoever with regard to innocence. Nothing. We have presented you * * * nothing but evidence of guilt in this case." It is well established that "prosecutors may not invade the realm of the jury by, for example, stating their personal beliefs regarding guilt and credibility, or alluding to matters outside the record." (Internal quotations and citations omitted.) *Akron v. McGuire*, 9th Dist. Summit No. 24638, 2009–Ohio–4661, ¶ 13.

---

trial court's response to her initial objections, it is possible she viewed the act of further objection as futile. To the extent that this Court should view any remaining comments under the plain error standard, we conclude that the totality of the improper comments constitutes plain error.

**{¶21}** Notwithstanding the numerous improper comments, we still must evaluate whether the comments prejudicially affected Mr. Hartman's substantial rights before we can conclude there is reversible error. *See Smith,* 14 Ohio St.3d at 15. The State's closing argument is particularly troubling to this Court because the objection by defense counsel was overruled and, thus, the jury received no admonishment concerning the numerous improper statements made by the prosecution. Further, the closing arguments were the last thing the jury heard prior to retiring to deliberate, as prior to closing argument the jury received its instructions.

**{¶22}** Additionally, we cannot say that the case against Mr. Hartman was overwhelming. The State was charged with proving each element of aggravated burglary beyond a reasonable doubt. The statute prohibiting aggravated burglary provides that

> [n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

R.C. 2911.11(A)(2). Mr. Hartman vigorously challenged some of these elements and presented six witnesses in his defense. With respect to the element of trespass, several of the defense witnesses testified concerning the Leightons' policy on visitors. Mr. Hartman's brother testified that Mr. Hartman was allowed over to the Leightons without calling ahead and could enter the residence without calling ahead. Mr. Hartman's brother-in-law testified that Mr. Leighton had an "open-door policy[]" with respect to Mr. Hartman and himself visiting. Mr. Hartman's brother-in-law stated that if Mr. Leighton was home, the door "would always be open[,]" they would not need to call ahead and that they "just walked into the mudroom, * * * open up that door and say, hello we're here." Mr. Hartman's sister testified that Mr. Hartman would go over

to the Leighton house without calling first and, in the past, Mr. Leighton had come over to her parents' house without calling and would just walk in. Mr. Hartman's father corroborated that portion of Mr. Hartman's sister's testimony and also testified that, on several occasions when visiting the Leighton property, he found the door open. It was undisputed that Mr. Hartman and the Leightons were friends for over 15 years. Thus, the State's evidence on this element was far from overwhelming.

{¶23} There was also conflicting evidence concerning whether Mr. Hartman employed any force, stealth or deception upon entering the residence. There was testimony from Deputy Clinage that Mr. Hartman had told him that the Leighton's door was partially open and additional testimony from Mrs. Leighton that her husband came in the house after she did and she did not know whether he closed the door. Accordingly, based upon the evidence, a trier of fact could have concluded that the door was open, and, thus, at the very least, questioned whether any force would have been used in initially entering the residence. Additionally, there was testimony that suggests that Mr. Hartman announced himself upon entering the residence and that the Leightons saw Mr. Hartman pull up into their driveway on an ATV, which would seem to go against a theory involving stealth.

{¶24} Moreover, there was conflicting evidence concerning whether Mr. Hartman intended to commit a criminal offense inside the Leighton home. The State's theory was that after the Hartmans' argument, Mr. Hartman was still angry and followed his wife to the Leightons' house with a gun. The defense presented several witnesses who testified it was extremely common for Mr. Hartman to go over to the Leightons with a gun and that it was common in general for people in the community to come over to each other's homes with weapons, due in large part to the amount of hunting that takes place in the area. In fact, Mr.

Hartman told Deputy Clinage that he had gone over to the Leightons' house to go groundhog hunting. Much of the evidence focused upon demonstrating that Mrs. Hartman and the children were afraid of Mr. Hartman and that that fear impacted the decision-making of Mr. and Mrs. Leighton. However, just because Mrs. Hartman and the children were concerned about Mr. Hartman's presence does not necessarily require the conclusion that Mr. Hartman intended to commit any crime inside the Leighton home. The trier of fact could reasonably conclude that testimony regarding Mr. Hartman's behavior while at the residence does not present a typical picture of a person intending to commit a crime inside someone's house. Upon request, Mr. Hartman gave his weapon to Mr. Leighton and went outside with him. Mr. Hartman and Mr. Leighton talked for some period of time, and Mr. Hartman was allowed to go back inside and get a beer. Moreover, there is no evidence that the police observed Mr. Hartman doing anything criminal while they were watching Mr. Hartman and Mr. Leighton talk outside the residence. Finally, we note that many of the State's improper comments go directly to aspects of the defense case and elements that were contested at trial. Given the conflicting evidence and theories of the case, we cannot say that the State's improper comments with respect to defense counsel and the credibility of witnesses did not impact the outcome of this trial.

{¶25} In light of the foregoing, we conclude that the prosecutor's improper remarks prejudicially affected the substantial rights of Mr. Hartman. Accordingly, we sustain Mr. Hartman's thirteenth assignment of error.

## ASSIGNMENT OF ERROR XVII

THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THE TRIAL COURT ERRED BY FAILING TO GRANT HARTMAN'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND BY FAILING TO GRANT HARTMAN'S MOTION FOR A NEW TRIAL.

{¶26} Mr. Hartman asserts in his seventeenth assignment of error that the trial court erred in failing to grant his motion for judgment of acquittal and for a new trial and that the verdict is against the manifest weight of the evidence.  At this time, we decline to address Mr. Hartman's argument asserting that the verdict is against the manifest weight of the evidence and his argument pertaining to his motion for a new trial because our resolution of Mr. Hartman's thirteenth assignment of error has rendered those arguments moot.  *See* App.R. 12(A)(1)(c). However, because Mr. Hartman's argument concerning the denial of his motion for judgment of acquittal challenges the sufficiency of the evidence, it is not moot.  *See Brewer,* 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 18.

{¶27} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Slevin*, 9th Dist. Summit No. 25956, 2012–Ohio–2043, ¶ 15.  "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶28}  Mr. Hartman was convicted of committing aggravated burglary in violation of R.C. 2911.11(A)(2).  R.C. 2911.11(A)(2) states that

> [n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately

occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

A criminal trespass occurs when one, "without privilege to do so, * * * [k]nowingly enter[s] or remain[s] on the land or premises of another[.]" R.C. 2911.21(A)(1). "'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). The privilege to enter or remain on the land or premises may be revoked. *State v. Brown,* 9th Dist. Wayne No. 11CA0054, 2013-Ohio-2945, ¶ 6. R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "'Force' is satisfied by 'any effort physically exerted.'" *Brown* at ¶ 6, quoting *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, ¶ 18-19 (9th Dist.). On appeal, Mr. Hartman only asserts that the State failed to (1) rebut evidence presented by the defense that Mr. Hartman's entry was privileged and (2) present evidence that the privilege was revoked.

{¶29} There is no dispute that the State had to establish that Mr. Hartman trespassed in the Leighton home, which meant that it had to establish that Mr. Hartman entered or remained in the residence without privilege to do so. *See* R.C. 2911.11(A)(2) and 2911.21(A)(1). While the State's evidence is not overwhelming as explained above, we conclude that sufficient evidence was presented in the State's case, if believed, whereby a jury could conclude beyond a reasonable doubt that Mr. Hartman trespassed in the Leighton residence. Both Mr. and Mrs. Leighton testified that Mr. Hartman did not have permission to enter their home that day. Mrs. Leighton indicated that Mr. Hartman was not invited over that day and that they were not expecting him either. Mr. Leighton testified that neither he nor his wife was getting along with Mr. Hartman in May 2009. When asked whether Mrs. Hartman and her husband were still

friends with Mr. Hartman at that time, she stated, "Not really." Moreover, she agreed that the friendship had become estranged. Both Mr. and Mrs. Leighton testified that they had not seen Mr. Hartman in at least a few months. Further, Deputy Doug Clinage, who responded to the scene on May 27, 2009, and later interviewed Mr. Hartman, testified that Mr. Hartman told him that, when Mr. Hartman arrived at the Leighton residence, he "observed the main door on the house, saw that the house was partially opened[,] * * * knocked on it, nobody answered. So * * * he entered the residence."

{¶30} Taken together, and viewing it in the light most favorable to the prosecution, a reasonable trier of fact could conclude beyond a reasonable doubt that Mr. Hartman trespassed in the Leighton residence in that he entered the residence without privilege to do so. We recognize that Mr. Hartman's act of knocking on the door and then entering could be consistent with conduct of a close friend who has privilege to enter a home. However, in viewing Mr. Hartman's action of knocking on the door most favorably to the State, it could reasonably be inferred that Mr. Hartman was aware that he did not have permission to just walk into the Leighton residence. Additionally, there was some evidence, when viewed in the light most favorable to the State, from which the jury might have concluded that Mr. Hartman remained in the residence without privilege to do so. Mr. Leighton testified that, "[e]very time [Mr. Hartman] went into my home, he wanted to talk to his wife. I followed him, stayed with him. She would not come out of the closet. I told him it's time for him to leave; and, finally, after about two or three times, he finally got on his bike and left." Accordingly, we conclude that the State presented sufficient evidence to demonstrate the element of trespass.

{¶31} To the extent Mr. Hartman asserts that the defense presented evidence that Mr. Hartman's entry was privileged and that the privilege was not revoked, given that there was

evidence presented by the State that there was a trespass, that defense evidence would go to a challenge to the weight of the evidence, and not the sufficiency of the evidence. Further, as this Court is reviewing Mr. Hartman's Crim.R. 29 motion, the only evidence properly before us for consideration is the evidence presented in the State's case. *See Slevin*, 2012–Ohio–2043, at ¶ 15.

**{¶32}** Based upon Mr. Hartman's limited argument, we overrule his seventeenth assignment of error.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ORDERING MELISSA HARTMAN TO TESTIFY IN VIOLATION OF THE SPOUSAL COMPETENCY PRIVILEGE, IN FAILING TO QUASH HER SUBPOENA, AND IN FAILING TO ENFORCE THE PROTECTIVE ORDER.

## ASSIGNMENT OF ERROR II

THE COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT MELISSA HARTMAN WAS A "VICTIM" OF AN ALLEGED AGGRAVATED BURGLARY OF ANOTHER'S RESIDENCE, WHICH IS A CRIME AGAINST PROPERTY, NOT A CRIME AGAINST A PERSON.

## ASSIGNMENT OF ERROR III

THE COURT COMMITTED REVERSIBLE ERROR IN HOLDING THAT THE "LAW OF THE CASE" DICTATED THAT THE COURT FIND MELISSA HARTMAN HAD WAIVED THE SPOUSAL COMPETENCY PRIVILEGE, WHEN THE TRANSCRIPTS FROM THE FIRST TRIAL WERE UNDER INVESTIGATION, WHEN THE INITIAL TRIAL COURT HAD NOT PROPERLY ADVISED MELISSA HARTMAN REGARDING THE SPOUSAL COMPETENCY PRIVILEGE, AND WHEN THE RECORDS OF BOTH TRIALS CONFIRM HER ASSERTIONS, NOT WAIVER OF HER PRIVILEGE.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING HIGHLY PREJUDICIAL HEARSAY REGARDING A PURPORTED REMARK OF A SIX-YEAR OLD, WHO WAS NOT COMPETENT TO TESTIFY AND WAS NOT A TRIAL WITNESS.

ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING HARTMAN'S MOTION TO CONTINUE THE TRIAL, FORCING HIM TO TRIAL WITHOUT RECEIVING REQUESTED AND NECESSARY DISCOVERY AND BEFORE RESOLVING ISSUES CONCERNING THE TAMPERING WITH THE TRANSCRIPTS OF HARTMAN'S FIRST TRIAL AND THEIR IMPACT ON HIS SECOND TRIAL.

ASSIGNMENT OF ERROR VIII

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF CRIMINAL TRESPASS, WHICH THE EVIDENCE SUPPORTED[.]

ASSIGNMENT OF ERROR IX

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO REQUIRE A UNANIMOUS VERDICT ON THE UNDERLYING INTENDED OFFENSE SUPPORTING THE AGGRAVATED BURGLARY CHARGE, THEREBY ALLOWING CONVICTION ON PREVIOUSLY ACQUITTED ELEMENTS.

ASSIGNMENT OF ERROR XI

THE COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE STATE TO MAKE REPEATED REFERENCES TO HIGHLY PREJUDICIAL AND FALSE UNCHARGED ACTS, IN VIOLATION OF EVIDENCE RULE 404(B).

ASSIGNMENT OF ERROR XII

THE COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE STATE TO CROSS-EXAMINE A FACT WITNESS REGARDING UNPROVEN AND UNCHARGED ACTS, IN VIOLATION OF EVIDENCE RULES 404(A) AND 403, AND BY DENYING HARTMAN'S REQUESTED JURY INSTRUCTIONS.

ASSIGNMENT OF ERROR XIV

THE TRIAL COURT ERRED BY PERMITTING KIM LEIGHTON TO TESTIFY TO MATTERS FOR WHICH SHE HAD NO PERSONAL KNOWLEDGE, INCLUDING BY PERMITTING THE JURY TO HEAR THE RECORDING OF KIM LEIGHTON'S 911 CALL, CONTAINING ADMITTEDLY FALSE "INFORMATION" WITHOUT PROPER LIMITING INSTRUCTIONS, AND WITHOUT CONDUCTING A BALANCING TEST,

ALL IN VIOLATION OF THE HEARSAY RULE AND OVER HARTMAN'S OBJECTIONS.

## ASSIGNMENT OF ERROR XV

THE TRIAL COURT ERRED BY REFUSING TO INSTRUCT THE JURY THAT HARTMAN WAS ON TRIAL ONLY FOR ONE COUNT OF AGGRAVATED BURGLARY AND NOT ON TRIAL FOR ANY OTHER PURPORTED OFFENSE.

## ASSIGNMENT OF ERROR XVI

THE TRIAL COURT ERRED BY FORCING HARTMAN TO TRIAL BEFORE THE PREVIOUS TRIAL'S TRANSCRIPTS HAD BEEN CORRECTED, THEREBY DEPRIVING HARTMAN OF HIS SIXTH AMENDMENT RIGHT TO CROSS-EXAMINE WITNESSES AGAINST HIM AND HIS RIGHT APPLICATION OF ACCURATE "LAW OF THE CASE."

## ASSIGNMENT OF ERROR XVIII

THE TRIAL COURT ERRED BY IMPOSING A SENTENCE OF FIVE YEARS ON A FIRST FELONY CONVICTION, CONTRARY TO THE OHIO REVISED CODE, WITHOUT ANY FINDINGS WHY THE THREE YEARS HARTMAN HAD ALREADY SERVED WAS NOT SUFFICIENT, AND WHERE THE EVIDENCE SHOWED CONDUCT FAR LESS SERIOUS, NOT MORE SERIOUS, THAN THE AVERAGE CONDUCT FOR THE CHARGED OFFENSE.

**{¶33}** In light of our resolution of Mr. Hartman's other assignments of error, we conclude his remaining assignments of error have been rendered moot, and we decline to address them at this time. *See* App.R. 12(A)(1)(c). Should the State attempt to retry Mr. Hartman, this decision should not be read as barring Mr. Hartman from raising any arguments related to issues that this Court has declined to address in this appeal due to mootness. Mr. Hartman's first, second, third, fourth, fifth, eighth, ninth, eleventh, twelfth, fourteenth, fifteenth, sixteenth, and eighteenth assignments of error are overruled as moot at this time.

## III.

**{¶34}** In light of the foregoing, we sustain Mr. Hartman's thirteenth assignment of error and remand the matter to the Medina County Court of Common Pleas. Mr. Hartman's remaining

assignments of error have either been overruled on the merits or have been rendered moot by the resolution of other assignments of error and will not be addressed at this time.

Judgment affirmed in part,<br>
reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

HENSAL, J.
CONCURS.

MOORE, P. J.
CONCURRING.

{¶35} I join the majority in its disposition of all of the assignments of error except for the thirteenth. I concur in the judgment that the prosecutor engaged in misconduct, but I feel compelled to write separately to address the over-arching conduct of the trial. The thirteenth assignment of error refers to "repeated acts of prosecutorial misconduct *that pervaded the entire trial*[.]" (Emphasis added.) A reading of the entire transcript reveals that prosecutorial misconduct did not pervade the entire trial. There is no question that the trial was contentious from beginning to end. However, the trial judge stressed the need for counsel to remain focused on the evidence and not to devolve into petty disagreements that would distract the jury. For the most part, during the trial, counsel successfully struggled to do so.

{¶36} A total of thirteen witnesses were examined and cross-examined over a period of several days, producing in excess of one thousand pages of transcript. It was not until closing argument in general, and the State's rebuttal in particular, that the wheels came off for the prosecution. The rebuttal prosecutor impugned the motives of defense counsel, stated personal opinions about facts in the case, and repeatedly called defense witnesses liars. Although the prosecutor's improper comments encompassed only approximately twenty pages of the total transcript, they went unchallenged by the court, and no curative instructions were given. So, while the misconduct did not pervade the entire trial, the statements went so far beyond the bounds of professional conduct in a courtroom, that I find it impossible to say that in a close case such as this one, a jury would have found the defendant guilty even without the improper comments. *See State v. Smith*, 14 Ohio St.3d 13, 14 (1984), *State v. Williams*, 79 Ohio St.3d 1, 12 (1997), *State v. DePew*, 38 Ohio St.3d 275, 287 (1988), and *State v. Keenan*, 66 Ohio St.3d 402, 405 (1993). *See also State v. Treesh*, 90 Ohio St.3d 460, 464 (2001) ("An improper

comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.")

{¶37} The unfortunate result is that this case will be remanded once again to the trial court where it is likely that yet more resources will be expended for yet another retrial. Whether that in fact happens is beyond our purview. However, where this Court attempted in its last opinion to gently suggest that the State not repeat its indiscretions, I will say it bluntly: the prosecuting attorney(s) are much too personally invested in this case to be objective. Hopefully, reassignments for any retrial will be considered.

APPEARANCES:

MARILYN A. CRAMER, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.